33961/04862/DVD/TKT                                                      ARDC #6204705

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ZOJO SOLUTIONS, INC.,<br>**Plaintiff,** | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case No. 1:10-cv-1175** |
| | ) | |
| THE STANLEY WORKS,<br>**Defendant.** | ) | **Honorable Milton I. Shadur** |
| | ) | |

## STANLEY BLACK & DECKER, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Defendant Stanley Black & Decker, Inc. (f/k/a The Stanley Works) ("SBD") hereby moves to dismiss plaintiff's Complaint under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## I.      BACKGROUND

The Complaint accuses SBD of engaging in false patent marking in violation of 35 U.S.C. § 292.[1]  The plaintiff is not a competitor of SBD and has not suffered any injury caused by SBD, but it purports to act on behalf of the U.S. government in seeking a share of the penalty imposed by § 292.  The plaintiff does not allege that SBD's products do not practice the inventions claimed in the respective patents; rather, the plaintiff alleges that SBD violated § 292 only by continuing to mark products with patent numbers after the expiration of the terms of those patents.

Historically, courts read § 292 to impose a maximum fine of $500 per incident of false marking, regardless of how many products were involved.  But in December 2009, the Federal Circuit issued an opinion in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009),

---

[1]  Citations to Title 35 U.S.C. are shortened to their section number (i.e., § 292, § 112, etc.).

holding that § 292 imposes a per-article penalty. Thus, the potential bounty recoverable by false marking claims multiplied overnight, and the plaintiff here seeks that bounty.

In the wake of the *Bon Tool* decision, high volume manufacturers of consumer products, like SBD, experienced a virtual tsunami of false marking lawsuits based on their products bearing the numbers of expired, but otherwise accurate, patents. Indeed, at least 130 complaints containing false marking claims have been filed post-*Bon Tool*. Gray on Claims, *False Marking Case Information*, http://www.grayonclaims.com/home/2010/4/2/false-marking-update-on-number-and-type-of-new-cases-pending.html. This Complaint was one of three filed against SBD within two weeks, all based on allegations of "expired patent" marking.[2]

## II.    SUMMARY OF THE ARGUMENT

The Complaint fails to state a claim upon which relief can be granted because § 292(a) penalizes the false marking of "any unpatented article," whereas the articles that plaintiff accuses SBD of falsely marking are not "unpatented." An article using the patent's claimed invention is not "unpatented" – because the invention was indeed awarded a patent. In the alternative, even if this Court finds that the Complaint states a claim, this Court should dismiss the Complaint in its entirety because plaintiff lacks standing as required for subject matter jurisdiction. Section 292(b) permits "[a]ny person" to sue for the penalty. Because § 292(b) vests the authority to enforce a penal law in a private plaintiff with absolutely no oversight or control by the Executive Branch of the U.S. government, it violates the "Take Care Clause" of Article II of the U.S. Constitution, and it therefore cannot validly confer standing on the plaintiff. U.S. CONST. art. II, § 3. In an apparent attempt to avoid Article II issues, plaintiff incorrectly purports to be a "relator" bringing a *qui tam* case on behalf of the U.S. government; but even a *qui tam* relator

---

[2]    *See Perfection Prod. Mgmt., LLC v. The Stanley Works*, No. 5:10-cv-00452 (N.D. Ohio filed Mar. 3, 2010); *Harrelson v. The Stanley Works*, No. 2:10-cv-00371 (N.D. Ala. filed Feb. 19, 2010).

must allege sufficiently concrete and tangible harm to show Article III standing.  Plaintiff's

Complaint fails to do this and should be dismissed.

## III.    ARGUMENT

### A.    Plaintiff's Allegations Do Not State a Claim for False Marking Because SBD's Products Are Not "Unpatented"

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a

claim for which relief can be granted because, on its face, it has not alleged a violation of § 292.

To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A claim for falsely marking an unpatented article requires proof of four elements: (1) a

mark indicating that an article is patented; (2) that the marking is on, affixed to, or used in

advertising for the article; (3) that the article is "unpatented"; and (4) an intent to deceive the

public. § 292(a); *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1351 (Fed. Cir. 2005).

Accepting all allegations in the Complaint as true, plaintiff still has pled no facts to support the

last two elements of false marking listed above.

The Federal Circuit construed the term "unpatented article" to mean "that the article in

question is not covered by at least one claim of each patent with which the article is marked."

*Clontech*, 406 F.3d at 1352.  Further, in *Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co.*,

786 F.2d 1124 (Fed. Cir. 1986), the Federal Circuit affirmed the district court's holding that

there was no violation of § 292 where the defendant had "omitted applicable patents from or

included expired patents on the labels on boxes used to ship thousands of firearms to customers"

over a period of sixteen years.  *Id.* at 1125 (emphasis added).  Section 292 has also been held

entirely inapplicable to expired patent markings by other district courts.  *See, e.g., FMC Corp. v.*

*Control Solutions, Inc.*, 369 F. Supp. 2d 539, 584 (E.D. Pa. 2005); *Wilson v. Singer Mfg. Co.*, Case No. 17,836, 1879 U.S. Dist. LEXIS 11 (N.D. Ill. 1879).

Here, plaintiff alleged that SBD's products are "unpatented" only because the applicable patents expired, not because the products are not covered by at least one claim of each of the marked patents as required by *Clontech*. This position fails to meet the *Clontech* definition of false marking and is also contrary to the *Arcadia* decision finding that the expired patents did not violate § 292, as well as the other district court cases noted above. Accordingly, plaintiff's attempt to equate a product whose patent coverage has expired with a product that is not and never was patented does not withstand a fair reading of § 292.

This narrow interpretation of "unpatented" is supported by the fact that § 292 is a penal criminal statute and thus must be strictly construed. *Johnston v. Textron, Inc.*, 579 F. Supp. 783, 795 (D.R.I.), *aff'd*, 758 F.2d 666 (Fed. Cir. 1984); *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1359 (9th Cir. 1980); *Brose v. Sears, Roebuck & Co.*, 455 F.2d 763, 765 (5th Cir. 1972); *Ansul Co. v. Uniroyal, Inc.*, 306 F. Supp. 541, 566 (S.D.N.Y. 1969), *aff'd in part, rev'd in part on other grounds*, 448 F.2d 872 (2d Cir. 1971); *G. Leblanc Corporation v. H. & A. Selmer Inc.*, 310 F.2d 440, 459 (7th Cir. 1962); *see also* P.J. Federico, *Commentary on the New Patent Act*, 75 J. PAT. & TRADEMARK OFF. SOC'Y 161, 218 (Mar. 1993 - reprinted); Senate Report No. 82-19792 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2424.

This interpretation of "unpatented" is further supported by the structure of § 292(a). The second of the three paragraphs that comprise § 292(a) is directed to false marking as it applies to issued patents, and the third paragraph is directed to false marking as it applies to patent applications. The second paragraph does not explicitly provide a cause of action for marking a product with the number of an expired patent; by contrast, the third paragraph explicitly

addresses false marking for both pending patent applications and applications that are no longer

pending (i.e., expired).  By explicitly providing a remedy for marking with an "expired"

application, but not an expired patent, Congress implied that § 292 does not confer a penalty for

marking with an expired patent.  *See O'Neill v. Dep't of Hous. & Urban Dev.*, 220 F.3d 1354,

1360 (Fed. Cir. 2000).

Moreover, there can be no intent to deceive based on the facts pled.  The inclusion of an

expired, but otherwise accurate, patent number on an article practicing the patented invention is

truthful and factually correct information.  As mentioned below in Part III.B.2.a. on Article III

standing, no harm can be caused because the inclusion of an expired patent number gives notice

to the public that the patent is expired, and thus the public cannot be deceived by such truthful

information.  Thus, no intent to deceive can be inferred from the facts pled because the alleged

conduct is simply not deceiving and, thus, the deception element of § 292 is lacking.  Therefore,

the Complaint fails to state a claim for relief and should be dismissed.[3]

### B.   Plaintiff's Complaint Should Be Dismissed Under Federal Rule 12(b)(1) Because the Plaintiff Lacks Standing

If this Court denies Defendant's motion to dismiss pursuant to Federal Rule 12(b)(6), this

Court must still evaluate plaintiff's standing to bring this suit.  If the plaintiff lacks standing, then

the Court lacks subject matter jurisdiction to hear the case and it must be dismissed.  *See Steel*

*Co. v. Citizens for Better Env't*, 523 U.S. 83, 109-10 (1998); FED. R. CIV. P. 12(h)(3).

Standing in cases brought on behalf of the U.S. government is governed by three key

U.S. Supreme Court cases that established the basic controlling principles of the interplay

---

[3]   The Eastern District of Virginia has ruled the opposite way in a case with similar facts.  *Pequignot v. Solo Cup Co.*, 540 F. Supp. 2d 649 (E.D. Va. 2008).  However, that ruling is in conflict with the Federal Circuit cases noted above and contrary to other district court decisions.  Also, the Virginia court failed to construe the statute narrowly in view of its criminal nature and First Amendment considerations.  That case is currently on appeal before the Federal Circuit, and oral argument took place on April 6, 2010.

between the Executive Branch's obligations under the "Take Care Clause" of Article II and the

"case and controversy" requirement for private plaintiffs under Article III. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, (1992) established that a private plaintiff lacks standing to enforce the

United States' laws merely acting in the role of the sovereign. *Id*. at 576-78. In *Morrison v.*

*Olson*, 487 U.S. 654 (1988), the Supreme Court delineated the narrow circumstances in which

the government's power to enforce the laws may be delegated to a private party. Specifically,

the Court held that entrusting a independent counsel outside the Executive Branch with the

sovereign powers of the government is permissible only in situations where the Executive

Branch retains sufficient control to satisfy its obligations to faithfully execute the laws. *Id.* at

696. Then, in *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000),

the high court recognized that the government's right to recover for an actual proprietary harm

can be assigned to a *qui tam* relator. *Id*. at 774. Such a proprietary harm, the *Vermont Agency*

court held, is sufficient to provide Article III standing to the relator. *Id.* at 778.

In other words, under the holding of *Vermont Agency*, a *qui tam* plaintiff can only be

assigned the right of recovery for an actual proprietary harm to the United States sufficient to

establish case and controversy standing under Article III. But the United States' sovereign

interest in enforcing its laws – by itself – cannot be freely transferred to private party, absent the

retention of sufficient Executive Branch control to ensure compliance with the "Take Care

Clause" as described in *Morrison*. With those basic constitutional ground rules in mind, SBD

next addresses their application to § 292(b).

### 1.   Section 292(b) Is an Unconstitutional Delegation of Executive Branch Power to a Private Plaintiff in Violation of Article II's "Take Care Clause" and thus Cannot Confer Standing

Unlike the False Claims Act at issue in *Vermont Agency*, nothing in § 292 purports to

assign a harm against the government or public in general to a private plaintiff. Instead, the plain

language of the statute states that a violator "[s]hall be fined not more than $500 for every such offense," and that "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." Simply put, a fine is a penalty to vindicate a violation of the government's laws. *See supra* Part III.A; *see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989) ("fines" is the term used for punishment in a criminal action); *United States v. Bajakajian*, 524 U.S. 321, 327-33 (1998); 18 U.S.C. § 3751 ("A defendant who has been found guilty of an offense may be sentenced to pay a fine."); BLACK'S LAW DICTIONARY (defining "fine"). There is no mention of an injury or harm to the government or the public in § 292, and there is no correlation between the fine imposed and any such injury or harm. This is in stark contrast to the False Claims Act which is an assignment of the government's damages claim. *Vt. Agency*, 529 U.S. at 773.

Absent the type of Executive Branch oversight described in *Morrison*, the function of executing and enforcing the law cannot be delegated outside the Executive Branch to a private party. *See Printz v. United States*, 521 U.S. 898, 923 (1997). The Executive Branch's Take Care duties apply irrespective of whether the law is criminal or civil. *See Nader v. Saxbe*, 497 F.2d 676 & n.19 (D.C. Cir. 1974) (citing *In re Neagle*, 135 U.S. 1, 63-64 (1890)). Here, § 292 is devoid of any Executive Branch oversight or control. Indeed, there is no requirement that the government even be informed of the litigation. Therefore, § 292(b) is constitutionally defective, and cannot serve as a basis to claim standing and invoke this court's jurisdiction.[4]

---

[4] Plaintiff could be a *qui tam* relator only if an injury to the government were assigned by § 292. *See Vt. Agency*, 529 U.S. at 774. Nothing in § 292 supports such a reading; indeed, the use of the words "fined," "offense," and "penalty" is inconsistent with the existence of an assignable injury, and more consistent with the sovereign role of law enforcement. Although the Supreme Court has but once referred in passing to § 292(b) as a *qui tam* statute, *id.* at 769 n.1, that was in dicta, and the Court did not actually analyze the statute – it was only mentioned in historical reference. However, the analysis in *Vermont Agency* leads to the opposite conclusion because there is no assignment of a proprietary

Admittedly, this issue is novel and has been addressed squarely only in *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009). In *Solo Cup*, the Eastern District of Virginia found § 292(b) to be constitutionally valid for various reasons: (1) an analysis of various appellate decisions affirming the validity of the False Claims Act; (2) the existence of private informer actions when the Constitution was drafted; (3) the control mechanisms required by *Morrison* were satisfied because the government was notified of the lawsuit by the clerk sending a notice to the USPTO as required by 35 U.S.C. § 290, and the government had in fact intervened in that case; and (4) the possibility that a defendant could be exposed to multiple lawsuits for the same conduct was merely hypothetical.

SBD respectfully submits that the *Solo Cup* analysis was incorrect and should not be followed by this Court. First, the Supreme Court upheld the False Claims Act in *Vermont Agency* as an assignment of a harm that provides Article III standing – the issue of Article II standing was moot and not reached by the Court. *Vt. Agency*, 529 U.S. at 778 & n.8. So, the Article II analysis of the False Claims Act in the cited appellate decisions is only dicta, and in any event the False Claims Act is distinguishable from § 292 because the government can take over a False Claims Act case from the outset as a matter of right, 31 U.S.C. § 3730(b), or at any time thereafter for good cause, 31 U.S.C. § 3730(c)(3). Thus, the False Claims Act has statutory control mechanisms built-in to ensure government participation that § 292(b) lacks entirely.

Second, the existence of *qui tam* actions at the time of the 1st Congress is but one minor historical fact, which must be discounted by the fact that the Supreme Court in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) held the Judiciary Act of 1789 to be unconstitutional in part as a violation of separation of powers. Similarly, the same Congress that proposed the

---

injury to support reading § 292(b) as a *qui tam* statute. Use of the word "relator" in the Complaint is not sufficient to read the plain language of the statute under which the suit was brought any differently.

Fourteenth Amendment one week later adopted a statute that reaffirmed racial segregation of public schools in Washington, D.C. *See Marsh v. Chambers*, 463 U.S. 783, 814 n.30 (1983) (Brennan, J., dissenting). Clearly, history cannot be controlling. And precedent over the years, such as *Morrison* and *Printz*, has further illuminated the separation of powers doctrine to provide a clear understanding that what § 292(b) purports to do cannot be permitted.

Third, the fact that the government is notified and may intervene does not militate a finding that the statute itself is constitutional. The fact that a notice of the lawsuit is sent to the USPTO by the court clerk under 35 U.S.C. § 290 is simply not informative, as the statute merely requires the Director of the USPTO to "enter the same in the file of such patent." It is not transmitted to anyone person involved in representing the government in litigation. The notice merely becomes part of the patent's public file so that persons reviewing the file are informed that it is the subject of litigation. Moreover, the fact that the government intervened in the *Solo Cup* case does not mean that it must or can do so in every case. Indeed, in *Stauffer v. Brooks Brothers, Inc.*, 2009 WL 1675397 (S.D.N.Y. 2009), the district court denied the government's motion to intervene in a § 292(b) case. Fourth, the concern of multiple lawsuits alleging the same conduct, which the Virginia court dismissed as hypothetical, has come to pass: SBD has been sued twice for the same false marking allegations in two different forums, namely this case and *Perfection Prod. Mgmt.*, Case No. 5:10-cv-00452 (N.D. Ohio).

More importantly, one of the hallmarks of the Executive Branch's Take Care obligations is the exercise of prosecutorial discretion. *In re United States*, 345 F.3d 450, 453 (7th Cir. 2003); *United States v. Nixon*, 418 U.S. 683, 693 (1974). *Morrison* protected that discretion because the President had discretion not to appoint an independent counsel, discretion to request such an appointment, and discretion to remove the independent counsel. *See also Myers v. U.S.*, 272

U.S. 52 (1926). Section 292(b) is devoid of any such discretion whatsoever. While the Virginia court noted that a protective order could be obtained under Rule 26(c) "if the relator's action interferes with a government investigation or prosecution," *Solo Cup Co.*, 640 F. Supp. 2d at 728, that very possibility in and of itself illustrates the separation of powers problem. A Rule 26(c) protective order merely limits discovery; it does not dictate control over the penalty sought or how the law should be enforced. Moreover, the issuance of a Rule 26(c) protective order is a discretionary decision by the court and does not equate to prosecutorial discretion. Finally, the Virginia court also noted that Rule 41(a) provided protection to the government to maintain its control over the litigation, because if the government intervened, then the litigation could not be dismissed without its approval. *Id.* at 727. This rule, however, cuts <u>both ways</u> because the government also cannot dismiss the litigation without the relator's approval. Therefore, even if the government is actually permitted to intervene, it cannot stop the prosecution of the claim, even if it is feels that no violation has occurred, thus wholly eliminating its prosecutorial discretion to cease an unwise litigation. This runs afoul of the core constitutional principles in *Morrison*, *Printz*, and *Myers*. Therefore, SBD submits that the Virginia court's ruling is respectfully incorrect and should not be followed.

### 2.    Plaintiff Has Not Alleged Sufficient Harm for Article III Standing

Accepting for the sake of argument that the plaintiff is a *qui tam* relator, it must demonstrate Article III standing as required by *Vermont Agency*. Federal courts possess jurisdiction under Article III of the Constitution only to hear actual cases or controversies. A case or controversy requires actual or imminent harm that a court can redress; without a case or controversy, a plaintiff does not have standing before the court. *Lujan*, 504 U.S. at 560-61. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. And, if the Court treats plaintiff as a *qui tam* relator as suggested, standing must be proven

in the form of a proprietary harm that has been assigned to him by the government. *Vt. Agency*,

529 U.S. at 773-74.  Plaintiff lacks Article III standing because the conduct alleged by SBD does

not meet this "irreducible constitutional minimum."

> **a.     Plaintiff has not – and cannot – allege a concrete and particularized injury to support Article III standing.**

The Complaint recites nebulous and speculative possibilities, and fails to identify any

actual or imminent harm.  The Complaint points to a generalized negative impact on the

marketplace without identifying a single tangible or realistic example of an actual or imminent

injury.  Vague references to nebulous harm are insufficient to confer standing.  *See Stauffer v.*

*Brooks Brothers, Inc.*, 615 F. Supp. 2d 248, 255 (S.D.N.Y. 2009) (quoting *Lujan*, 504 U.S. at

560).  In *Brooks Brothers*, plaintiff alleged that defendants "wrongfully quelled competition" in

the market for bow ties, "thereby causing harm to the economy of the United States" and that by

"wrongfully and illegally advertis[ing] patent monopolies that they do not possess defendants

have 'benefitted in at least maintaining their considerable market share . . . in the high-end

haberdashery marketplace.'"  *Id.* at 254.  Indeed, the allegations in the *Brooks Brothers* case that

failed to support standing are the same as those made here.[5]

Further, the conduct alleged – that is, SBD doing nothing more than marketing products

bearing expired patent numbers – does not cause any injury.  If anything, it provides a tangible

benefit to the public that far outweighs any alleged speculative harm.  When the marked patent is

accurate but expired, its very inclusion on the product provides the competition and public in

general with notice that the patented subject matter is in the public domain and free to copy.

---

[5]  Brooks Brothers is currently on appeal to the Federal Circuit (Case No. 2009-1428).  SBD filed an amicus brief on the standing issue in that case, and estimates that a decision will be reached by late summer/early fall of 2010.

With a patent number in hand, an interested person can easily verify that the patent has expired,[6]

and then freely replicate the patented invention using the teachings of the patent itself. As one

commentator aptly stated:

> [I]t is difficult to understand how a mens rea can attach to marking an expired
> patent number on manufactured goods. If anything, the argument could be made
> that publishing an expired patent number on goods presents an invitation to copy
> the goods as free to the public: It is a simple matter to go to the PTO website and
> check the patent number and immediately determine whether the patent has
> expired or not. The patentee loses more than it gains through marking an expired
> patent number.

Justin E. Gray & Harold C. Wegner, *The New Patent Marking Police: Answering Clontech*

*And Forest Group*, http://www.grayonclaims.com/storage/MarkingPoliceVers4.pdf (last visited

Mar. 16, 2010).

By law, a patent must include "a written description of the invention, and of the manner

and process of making and using it, in such full, clear, concise, and exact terms as to enable any

person skilled in the art to which it pertains, or with which it is most nearly connected, to make

and use the same, and shall set forth the best mode contemplated by the inventor of carrying out

his invention." 35 U.S.C. § 112. This is the quid pro quo of the patent system: in exchange for

this exacting and enabling disclosure of the invention, the patent owner receives a limited term of

exclusivity to practice the invention. *See Ajinomoto Co. v. ITC*, No. 2009-1081, 2010 U.S. App.

LEXIS 4796, at *11 (Fed. Cir. Mar. 8, 2010). After the expiration of the patent term, the

invention is free to use and the teachings of the patent specification are dedicated to the public.

This statutory quid pro quo embodies the constitutional mandate "[t]o promote the progress of

---

6 This can be done simply by viewing the information on the face of the patent on the U.S. Patent &
  Trademark Office's website, and calculating the expiration date. This takes a mere few minutes to
  accomplish by adding 17 years to the issue date or 20 years to the filing date, depending on the date of
  issuance.

science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. CONST. art. I, § 8.

Marking a product with an expired patent number is consistent with this constitutional and statutory quid pro quo, because an expired patent number informs customers and competitors that the marked product contains patented technology that is now free for the public to adopt. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 161 (1989) ("The federal patent scheme provides a basis for the public to ascertain the status of the intellectual property embodied in any article in general circulation."). By making information about a patent's status readily available on the very product itself, the system serves to encourage – not discourage – desirable competition. Not only is the quid pro quo of the patent system respected, but the patent number gives the public direct notice of the applicable expired patent so that its enabling teachings can be used to replicate the invention.

Thus, the mere inclusion of an expired patent number by itself cannot confer Article III standing for a qui tam action under § 292(b). The marking of an expired patent on a product confers a benefit on the public consistent with the goals of the patent system, and accordingly there simply is no harm for the federal courts to redress. Indeed, because § 292 is a penal statute, it must be strictly construed. *See supra* Part III.A. Strictly requiring proof of Article III standing is consistent with the statute's penal nature, assuming its constitutional validity.

To find otherwise would actually impose more of a burden on inventors and companies seeking to determine whether an unmarked product may be covered by a patent because they would have to go through the more expensive and time consuming process of conducting a patent search, reviewing the patents, identifying which patents may apply to the product, and then confirming whether the identified patent(s) have expired. For example, according to one

survey, the nationwide average cost for a patent search, analysis and opinion is $3,940.   AIPLA Report of the Economic Survey 2009, at 1-115.   Identifying the expired patent number on the product provides a benefit by relieving potential competitors of this burden.   Conferring standing on a non-competitor private plaintiff, like the one in this case, who cannot prove any tangible and concrete harm, will do more harm than good by encouraging patent owners to remove expired patent numbers from their products.

### b.  Plaintiff's allegations do not satisfy the redressability requirement for Article III standing.

Even if plaintiff alleged an actionable injury, if a ruling in plaintiff's favor would not redress the injury he alleges, then plaintiff lacks standing to bring his claim.  *Warth v. Seldin*, 422 U.S. 490 (1975); *Linda R. S. v. Richard D.*, 410 U.S. 614, 618 (1973).   In this case, plaintiff has alleged only general injuries to SBD's competitors and to the competitive market.   But the resulting judicial remedy would do nothing to redress those alleged competitive injuries.   At most, under § 292(b) the plaintiff and the government would share a monetary amount in the form of the penalty paid by SBD.   But these penalty payments to plaintiff and the government would do nothing to remedy the alleged competitive harms because no competitors or customers of SBD would be compensated for their alleged losses.

Notably, this monetary interest in the outcome of the case does not confer Article III standing on the plaintiff.  *See Vt. Agency*, 529 U.S. at 773.   That is, there must be an actual or imminent injury to be compensated, and a mere interest in the case's outcome (which is what the plaintiff's 50% share of the penalty is) by itself does not confer standing.[7]   Accordingly, on this additional ground, no Article III standing should be found.

---

[7]  While the Eastern District of Virginia reached the opposite conclusion in the *Solo Cup* case, it is submitted that the District Judge in that case did not appreciate this key distinction between a recovery that arises from the injury-in-fact and a mere bounty-like interest in the outcome of the lawsuit.   Under

## IV.    CONCLUSION

WHEREFORE, defendant Stanley Black & Decker, Inc. (f/k/a The Stanley Works)

respectfully requests that this Court dismiss plaintiff's Complaint pursuant to F.R.C.P. 12(b)(1)

and 12(b)(6) for the reasons advanced above.

Respectfully submitted,

Dated April 30, 2010

s/ David C. Van Dyke
David C. Van Dyke (#6204705)
Trisha K. Tesmer (#6276038)
CASSIDAY SCHADE LLP
20 N. Wacker Drive, Suite 1000
Chicago, IL  60606
Phone: (312) 444-2464
E-Mail: dvandyke@cassiday.com
E-Mail: tkt@cassiday.com

Of Counsel:
Bryan P. Collins
Sarah R. Greene
PILLSBURY WINTHROP SHAW PITTMAN
LLP
1650 Tysons Blvd., 14th Floor
McLean, VA  22102
Phone: (703) 770-7900
E-Mail: bryan.collins@pillsburylaw.com
E-Mail: sgreene@ pillsburylaw.com

---

*Vermont Agency*, the former can confer standing, but the latter cannot.  However, the Eastern District of Virginia's analysis found standing based on the government's sovereign interest in enforcing the laws and the interest in the potential penalty awarded. *Id.* at 720-24.  Because the government's sovereign interest in enforcing the laws is not assignable, and *Vermont Agency* does not justify standing based on merely an interest in the lawsuit's outcome, the *Solo Cup* decision cannot be followed because it is inconsistent with Supreme Court precedent.  Notably, the Southern District of New York did not adopt this holding for similar reasons in *Brooks Brothers*, and it is submitted that the *Brooks Brothers* decision better conforms to Supreme Court jurisprudence on standing.